FILED-USDC-NDTX-DA
'26 SEP 4 PM2:42
JJF

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

3-26CV3021-E

TURQUOYA HALL, Civil Action No. __________

Plaintiff,

v.
MOLINA HEALTHCARE, INC., JURY TRIAL DEMANDED

Defendant.

## COMPLAINT AND JURY DEMAND

## I. INTRODUCTION

**1. I, Turquoya Hall, ("I"), proceeding pro se, brings this action against Defendant Molina Healthcare, Inc. ("Defendant" or "Molina") for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.**

**2. I am African American and was employed by Defendant as a Care Review Processor.**

**3. I contend that Defendant subjected my to unequal treatment because of my race and retaliated against my after I complained about and escalated concerns regarding unequal treatment affecting my work and production.**

**4. Among other things, I contend that work that employees were generally expected to pull themselves was withheld from my, that I was assigned cases requiring greater responsibilities and more time to complete, and that shorter, less time-consuming cases were selectively provided to my White counterpart.**

**5. I contend that this unequal distribution of work placed my at a disadvantage in meeting Defendant's production expectations.**

**6. I reported the work-distribution problem and its effect on my production and subsequently escalated the matter through management.**

**7. I contend that after my escalation, Defendant placed my on a Performance Improvement Plan ("PIP"), which affected my employment record and ability to pursue internal employment opportunities.**

**8. I further contends that Defendant subsequently subjected my to heightened scrutiny and discipline in connection with system problems and alleged performance errors that I repeatedly reported, documented, and disputed.**

**9. I timely pursued administrative remedies through the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue.**

**10. I seek damages and appropriate legal and equitable relief for Defendant's alleged violations of Title VII.**

## II. JURISDICTION AND VENUE

**11.** This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

**12. This Court has subject-matter jurisdiction over my federal claims pursuant to 28 U.S.C. § 1331 and the jurisdictional provisions of Title VII.**

13. I was employed by Defendant as a Care Review Processor and performed my employment duties remotely from Dallas County, Texas.

14. The employment practices challenged in this action affected me in Dallas County, Texas, where I performed my employment duties.

15. Venue is proper in the Northern District of Texas under 42 U.S.C. § 2000e-5(f)(3), and I bring this action in the Dallas Division.

## III. PARTIES

16. I, Turquoya Hall, is an individual who resides in Dallas County, Texas, and was employed by Defendant.

17. Defendant Molina Healthcare, Inc. was my employer during the period relevant to this action.

18. I was employed by Defendant in the position of Care Review Processor.

19. At all relevant times, Defendant was an employer subject to Title VII.

## IV. FACTUAL ALLEGATIONS

### A. Unequal Distribution of Work

20. I was employed by Defendant as a Care Review Processor.

21. I am African American and worked with a White counterpart who performed the same or substantially similar work and had comparable qualifications.

22. Employees were generally expected to pull their own work as they progressed through the available workload.

23. Beginning around September 2025, I observed that work that otherwise would have been available for my to pull was withheld from my.

24. I was assigned cases requiring greater responsibilities and more time to complete, while shorter, less time-consuming cases were selectively provided to my White counterpart.

25. Because my productivity was measured by the amount of work I completed, I contend that this manner of distributing cases placed my at a disadvantage in meeting Defendant's production expectations and negatively affected my production numbers.

26. On or about September 5, 2025, I raised the work-distribution problem with my supervisor, Nichelle Rodgers.

27. I escalated the matter to Tanisha Perez, the manager above my supervisor.

28. I provided information concerning the work-distribution problem and explained the effect it was having on my production.

**B. my September 2025 Performance Improvement Plan**

29. During an ordinary monthly meeting concerning my productivity numbers, I raised concerns regarding the distribution of work and its effect on my production.

30. I was not placed on a PIP during that ordinary monthly productivity meeting and was not informed during that meeting that I would be placed on a PIP.

31. The PIP was not initiated during my ordinary monthly productivity meeting; it was initiated only after I escalated the work-distribution matter to Perez.

32. It was after I escalated the work-distribution matter to Perez that Defendant placed me on a Performance Improvement Plan.

33. The PIP was issued on September 22, 2025 and stated that its duration was 30 days.

34. The PIP identified an expected productivity level of approximately 50 to 56 cases per day and stated that I had averaged approximately 41 cases during the performance period relied upon by Defendant.

35. The performance period relied upon for the PIP covered approximately two weeks, from approximately August 15 through September 2, 2025.

36. Defendant's PIP Quick Reference Guide states that the guide is intended to assist department stakeholders in understanding how to document and report "monthly progress" for identified PIP interventions.

37. I contend that the approximately two-week performance period relied upon for the PIP did not fairly reflect my performance because the distribution of work during the relevant period placed me at a disadvantage in meeting Defendant's production expectations.

38. I contend that assigning my more responsibility-heavy and time-consuming cases while shorter cases were selectively provided to my White counterpart adversely affected the production figures Defendant subsequently relied upon.

39. When sufficient work was available and I was able to perform work without the unequal case-distribution disadvantage described above, I met the applicable productivity expectations during the PIP.

40. The PIP was completed and closed on or about October 20, 2025.

**C. Effect of the PIP on Internal Employment Opportunities**

41. I was hired by Defendant in April 2025 and reached approximately one year of employment in April 2026.

42. Defendant's internal employment application process asked applicants whether they had received a written corrective action or Performance Improvement Plan at any point during the preceding six months.

43. At the time I reached approximately one year of employment, fewer than six months had elapsed since the PIP was closed on or about October 20, 2025.

44. I understood Defendant's internal-mobility requirements to prevent my from pursuing an internal transfer at that time because the PIP remained within the applicable six-month lookback period, and I contend that the PIP therefore adversely affected my ability to pursue other employment opportunities within Molina.

45. I wanted to pursue another position within Molina after becoming eligible to do so and contends that, absent the PIP and resulting internal-mobility restriction, I could have pursued an internal transfer before the subsequent May 2026 corrective action.

**D. System Problems and my Reports to Management**

46. During my employment, I experienced recurring problems with the computer systems used to perform my work.

47. I observed instances in which work I had completed did not appear to save correctly, previously completed work later appeared as new or incomplete, duplicate assignments occurred, and other work items were mislabeled or otherwise did not appear to process as expected.

48. I also observed instances in which faxes appeared to disappear from the workflow for periods of time. I was concerned that disappearing faxes and other system failures could affect patient care.

49. I reported the system problems to management and documented reported problems with screenshots, including screenshots that I contend showed work had been completed before the system later reflected a different status.

50. I contend that management repeatedly required my to provide proof of the system problems I reported, notwithstanding the screenshots, prior reports, and IT involvement.

51. I complained that other employees who reported problems received assistance without being subjected to the same disbelief or repeated demands for documentation that I experienced.

52. I was concerned that unresolved system problems could affect whether work was properly credited to my and could therefore affect my productivity measurements and the accuracy of errors attributed to my.

53. I continued reporting the problems because they affected my work, my productivity measurements, and, in my view, potentially patient care and compliance.

54. I contend that, rather than receiving adequate assistance with the recurring problems, I experienced increasing scrutiny regarding my productivity and alleged errors.

55. I continued to document and dispute system-related issues that I believed were being attributed to my performance.

### E. April Error Review

56. In April 2026, Defendant raised concerns regarding errors attributed to my work.

57. I disputed certain errors and requested review.

58. On April 22, 2026, Perez sent I a written follow-up concerning the error review.

59. Perez stated that seven errors had been logged and that I challenged three of them.

60. Perez removed all three challenged errors, reducing the count from seven to four.

61. Perez stated that the discussion was "not punitive in nature but supportive."

62. I contend that the removal demonstrated that errors initially attributed to my could be disputed and removed upon review.

63. I continued to raise concerns regarding errors I believed were system-related or incorrectly attributed to my.

64. I contend that, despite the successful April challenges, I was not afforded the same opportunity to challenge or review certain later errors before they were counted or relied upon in discipline.

### F. May 22, 2026 Written Corrective Action

65. On May 22, 2026, Defendant issued me a written corrective action based on alleged performance concerns.

66. The corrective action stated that six additional errors had been identified during the preceding month.

67. The corrective action alleged that on May 18, 2026, I released signed cases to the unassigned work queue without notifying leadership.

68. Defendant initially alleged that the release negatively impacted departmental SLA requirements.

69. I disputed that allegation and maintained that the cases did not miss SLA.

70. I maintained screenshots and information concerning possession, release, and completion times that I contend support my position that no SLA miss occurred.

71. The written corrective action also relied on feedback concerning H0018 requests.

72. The H0018 concern was initially described as a failure to add a "service line."

73. I disputed the allegation and explained that the issue involved a bed line, not a service line, and that the system or process applicable to the older case did not permit adding the bed line as later expected.

74. I disputed characterization of the H0018 matter as a performance error.

75. I also disputed reliance on the six errors in light of the prior error-challenge process, including the three April errors that had been removed.

76. I contend that I was not afforded an opportunity to challenge or review certain later errors before they were counted and relied upon.

77. I questioned how an allowable error rate could be calculated when I was not receiving the productivity information necessary to evaluate that calculation.

78. I raised these concerns with management and requested review.

**G. my Challenge to H0018 and Management Review**

79. I challenged the H0018 allegation and requested review.

80. I explained that the initial allegation referred to a "service line," while the later issue identified by management involved a bed line.

81. I explained that the system or process applicable to the case did not permit my to add the bed line as later expected.

82. I maintained that I should not be held responsible for an action that I contend the applicable system or process did not permit.

83. I raised the H0018 issue as part of my broader challenge to the May 22 corrective action.

84. Director Donna Jeter-Francis reviewed my concerns and supporting information.

85. In a June 1, 2026 response, the Director described the H0018 issue as involving two cases in which a bed line allegedly was not added, rather than a service line.

86. The Director stated that management had received feedback from the clinical team concerning H0018.

87. I continued to dispute the H0018 allegation based on the system or process limitation I had reported.

**H. my Challenge to Error Count and Productivity Calculation**

88. I challenged Defendant's calculation of allowable errors and the number of errors attributed to my.

89. I questioned the calculation because it was based on productivity information that I contend I was not receiving in a manner that allowed my to evaluate the calculation.

90. I disputed the reliability of the productivity figures because I contend certain productivity credit, including peer-to-peer work, was not fully reflected.

91. I also contends that the recurring system problems I reported affected the reliability of the productivity and error figures.

92. In the June 1, 2026 response, the Director provided a written calculation of the error rate relied upon by management.

93. The Director stated that Pega productivity of 28.34 plus call productivity of 11.33 resulted in total productivity of 39.67.

94. The Director calculated two percent of 39.67 as 0.79 and rounded that figure to one allowable error per week.

95. The Director then multiplied one allowable error per week by approximately 4.5 weeks to obtain approximately 4.5 allowable errors.

96. The Director stated that six errors had been identified at the time of the written warning and two additional errors afterward, for a total of eight.

97. The Director stated that productivity itself was not the basis for the written warning, although productivity expectations continued to be monitored.

98. I continued to dispute reliance on certain later errors because I contend they were counted without giving my the same opportunity to challenge them that had been provided in April.

99. In April, I had challenged three of seven errors and all three challenged errors were removed, leaving four.

100. I therefore contends that counting later disputed errors before providing a comparable review did not afford my the same challenge process.

**I. Director's Review and Clarification of SLA**

101. I challenged the May 22 allegation concerning release of cases to the unassigned work queue.

102. The written corrective action alleged that releasing the cases without notifying leadership negatively impacted departmental SLA requirements.

103. I disputed that allegation and maintained that the cases did not miss or go outside SLA.

104. I maintained screenshots and information that I contend supported the timing of the cases.

105. In the June 1, 2026 response, the Director clarified management's position regarding the incident.

106. The Director stated that the concern was not that the specific cases referenced went out of SLA, but that releasing cases without notification created a potential risk to workflow management and case-assignment processes.

107. The Director stated that employees were expected not to release cases without notifying leadership and that the expectation had been communicated through team discussions, emails, and daily POD communications.

108. The Director explained that the process was intended to ensure cases were identified, tracked, and assigned according to receipt date and time.

109. The Director further explained that the process addressed complex cases being held and then released near the end of a shift, which could create workload challenges for later shifts.

110. I maintain that this subsequent explanation was materially different from the original allegation of negative SLA impact because management's review acknowledged that the particular cases did not go out of SLA.

111. Defendant nevertheless continued to rely on the May 18 incident as part of the corrective action.

**J. Escalation to Employee Relations, Leave, and Separation**

112. After receiving the May 22 corrective action, I continued to dispute the allegations and sought internal review.

113. I raised concerns that I was being singled out, treated differently, and punished after reporting problems, while other employees received assistance.

114. I also raised concerns regarding the accuracy of the allegations, unresolved system problems, and the process for challenging errors.

115. I escalated my concerns to Defendant's Employee Resource Center or Employee Relations function.

116. I was told that my concerns would be investigated and that there would be follow-up.

117. Management's review resulted in the Director's June 1, 2026 written response.

118. The Director addressed my contention that I was being singled out and stated that management had found no evidence that different standards were being applied.

119. I disagreed and continued to maintain that I had experienced differential treatment in work distribution, responses to system problems, error review, and discipline.

120. I contend that the continuing issues and discipline caused substantial stress and emotional distress.

121. I was approved for leave beginning in June 2026 through July 15, 2026.

122. I did not return to work after my leave commenced.

123. I resigned from Defendant on July 2, 2026.

124. I was not terminated by Defendant.

125. I contend that I resigned because of the cumulative treatment, stress, and my belief that the problems I had reported remained unresolved.

126. I sought other employment.

127. I contend that I suffered lost employment opportunities, emotional distress, and other damages as a result of Defendant's alleged conduct.

**K. EEOC Charge and Exhaustion**

128. I timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Charge No. 450-2026-04978.

129. my Charge identified race and retaliation as bases of discrimination, identified my race as African American, and identified the relevant period as beginning on or about September 5, 2025 and continuing through June 2, 2026.

130. Among other matters, my Charge alleged that I reported problems concerning the distribution of work, was subsequently placed on a Performance Improvement Plan that affected my ability to pursue other positions, and was disciplined for alleged errors that I disputed.

131. my Charge asserted discrimination under Title VII based on race and retaliation under Title VII's anti-retaliation provisions.

132. I signed my Charge on June 9, 2026.

133. On June 9, 2026, the EEOC issued me a Determination and Notice of Rights concerning Charge No. 450-2026-04978.

134. On June 9, 2026, the EEOC sent I an official email notification advising I that the Determination and Notice of Rights was available in the EEOC Public Portal.

135. The EEOC's June 9, 2026 email stated that the email itself, as well as the Determination and Notice of Rights, constituted official notice of my right to sue Defendant and that I had 90 days from receipt of the notice to file suit.

136. The EEOC advised I that it had dismissed the Charge and that I had the right to sue Defendant in court.

137. [FOR FILING COPY ONLY: I commenced this action within 90 days after receiving the EEOC's Notice of Right to Sue and has satisfied the administrative prerequisites applicable to my Title VII claims.]

## V. CLAIMS FOR RELIEF

### COUNT I - RACE DISCRIMINATION UNDER TITLE VII

138. I incorporate the preceding allegations as though fully set forth herein.

139. I am African American and is a member of a protected class.

140. Defendant was an employer subject to Title VII.

141. I was qualified for and performed the position of Care Review Processor.

142. I worked with a White counterpart who performed the same or substantially similar work and had comparable qualifications.

143. Although employees were generally expected to pull their own work from the available workload, I observed that work that otherwise would have been available for my to pull was withheld from my. I was assigned the cases requiring more responsibilities, while the less lengthy cases were selectively provided to my White counterpart, negatively affecting my production numbers.

144. Because my productivity was measured by the amount of work I completed, assigning I more time-consuming cases requiring greater responsibilities while selectively

providing shorter, less time-consuming cases to my White counterpart placed me at a disadvantage in meeting Defendant's production expectations.

145. I reported the unequal distribution of work and its effect on my production to my supervisor and escalated the matter to Perez.

146. I was not placed on or informed of a PIP during the ordinary monthly productivity meeting; the PIP was initiated only after my escalation.

147. The PIP relied on an approximately two-week performance period even though I had reported that the distribution of work placed my at a disadvantage in meeting production expectations.

148. I contend that the production numbers did not fairly reflect my performance because the cases assigned to my required greater responsibilities and more time than the shorter cases selectively provided to my White counterpart.

149. I contend that when sufficient work was available and I was able to perform without the unequal case-distribution disadvantage, I met the applicable productivity expectations during the PIP.

150. The PIP affected my employment record and ability to pursue internal opportunities because it remained within Defendant's six-month internal-mobility lookback period.

151. I also contends that I was subjected to heightened or unequal scrutiny concerning system problems and alleged errors and was repeatedly required to substantiate problems I reported.

152. I provided screenshots and participated in communications with IT concerning reported system problems, yet I contend my reports were questioned or inadequately resolved.

153. I contend that other employees received assistance with reported problems without being subjected to the same disbelief, documentation demands, or discipline.

154. In April 2026, seven errors were identified; I challenged three, all three challenged errors were removed, and the count was reduced to four.

155. The May 22 corrective action relied on additional alleged errors, the H0018 issue, and the May 18 case-release incident.

156. I disputed material portions of the corrective action, including later errors I contend I was not permitted to challenge before they were relied upon, the H0018 allegation, and the characterization of the May 18 incident as causing SLA harm.

157. Management's later review acknowledged that the particular May 18 cases did not go out of SLA and described the concern instead as a potential risk to workflow management and case assignment.

158. I contend that I was treated differently from my White counterpart by being assigned greater-responsibility, more time-consuming cases while shorter cases were selectively provided to the White counterpart, and that this unequal distribution adversely affected my production and contributed to the PIP and resulting employment consequences.

159. I contend that the unequal case distribution, resulting production disadvantage, PIP and internal-opportunity effect, treatment of my system reports, error scrutiny, and subsequent discipline constituted differential treatment because of race.

160. I filed an EEOC Charge alleging race discrimination and retaliation.

161. I allege that race was a motivating factor in Defendant's treatment of my and that Defendant thereby subjected my to disadvantageous terms, conditions, or privileges of employment in violation of Title VII.

162. As a result, I suffered damages and seeks the relief stated below.

## COUNT II - RETALIATION UNDER TITLE VII

163. I incorporate the preceding allegations as though fully set forth herein.

164. Title VII prohibits an employer from retaliating against an employee because the employee opposed an employment practice she reasonably believed was discriminatory or otherwise unlawful under Title VII.

165. On or about September 5, 2025, I complained to my supervisor concerning unequal work distribution and its effect on my production.

166. I complained that work was being withheld from my and that the manner in which work was being distributed was placing my at a disadvantage and negatively affecting my production numbers.

167. I escalated the matter to Perez and provided information concerning the work-distribution problem and its effect on my production.

168. I was not placed on or informed of a PIP during the ordinary monthly productivity meeting.

169. Only after I escalated the work-distribution matter to Perez did Defendant initiate the PIP.

170. Defendant issued the PIP on September 22, 2025, shortly after my complaint and escalation.

171. I allege that the timing and circumstances support my contention that the PIP was imposed in response to my complaints and escalation concerning unequal treatment.

172. The PIP affected my employment record and internal employment opportunities, including through the six-month internal-mobility lookback period.

173. I continued to report system problems, dispute alleged errors, and complain that I was being treated differently, singled out, and punished after reporting problems.

174. I complained that management treated my differently, that I was unheard or singled out, and that other employees received assistance while I was subjected to disbelief, demands for proof, and discipline.

175. I continued to document and challenge alleged errors and system problems.

176. In April 2026, I successfully challenged three errors, and all three were removed.

177. On May 22, 2026, Defendant issued a written corrective action relying in part on additional alleged errors.

178. I contend that I was not afforded an opportunity to challenge certain later errors before they were counted and relied upon, despite the prior challenge process.

179. I also challenged the H0018 allegation and the characterization of the May 18 incident as negatively impacting SLA.

180. Management's later review acknowledged that the particular cases did not go out of SLA and described the concern as a potential workflow and case-assignment risk.

181. I escalated my concerns through management and Employee Relations and continued to complain that I was being singled out, treated differently, and punished.

182. I allege that the PIP, resulting opportunity restrictions, heightened scrutiny, reliance on disputed errors, and corrective action were materially adverse actions that could discourage a reasonable employee from raising complaints concerning perceived discriminatory treatment.

183. I allege a causal connection between my protected opposition and the materially adverse actions, including the close timing between my September complaint and escalation and the subsequent PIP.

184. my EEOC Charge expressly alleged retaliation under Title VII.

185. I allege that Defendant subjected me to materially adverse actions because I complained about and opposed treatment that I reasonably believed was discriminatory and unlawful.

186. As a result, I suffered damages and seeks the relief stated below.

## VI. DAMAGES AND INJURIES

187. As a direct and proximate result of Defendant's alleged discrimination and retaliation, I have suffered damages and injuries.

188. I have experienced emotional pain, mental anguish, stress, humiliation, and loss of enjoyment of life.

189. I have incurred medical, psychiatric, counseling, and related expenses associated with the emotional distress I experienced.

190. I suffered lost employment opportunities and economic losses, including the inability to pursue internal employment opportunities while the PIP remained within Defendant's applicable internal-mobility lookback period, and seeks back pay and, where reinstatement is unavailable or inappropriate, front pay to the extent permitted by law and supported by the evidence.

191. The PIP and written corrective action affected my employment record and professional reputation within Molina.

192. I seek compensatory damages in an amount to be determined by the trier of fact, subject to the limitations imposed by applicable federal law.

193. I seek punitive damages to the extent permitted by law and to the extent the evidence establishes that Defendant acted with malice or reckless indifference to my federally protected rights.

194. I also seeks appropriate equitable relief concerning the PIP, written corrective action, and other disputed information contained in my employment records.

## VII. PRAYER FOR RELIEF

WHEREFORE, I respectfully requests that the Court enter judgment in my favor and against Defendant and award:

A. A declaration that Defendant violated my rights under Title VII;

B. Compensatory damages for emotional pain, mental anguish, humiliation, stress, and other compensable nonpecuniary injuries;

C. Recovery of medical, psychiatric, counseling, and related expenses to the extent recoverable under applicable law;

D. Back pay, lost employment benefits and opportunities, and other economic losses proven at trial, together with front pay in lieu of reinstatement to the extent appropriate and permitted by law;

E. Punitive damages to the extent permitted by law and supported by the evidence;

F. Appropriate equitable relief concerning my PIP, written corrective action, and employment records, including removal, correction, or expungement where appropriate;

G. Appropriate equitable relief concerning my eligibility for rehire by Defendant;

H. Appropriate injunctive or equitable relief requiring compliance with Title VII's prohibitions against race discrimination and retaliation;

I. Taxable costs and any fees or expenses recoverable by a pro se litigant under applicable law;

J. Prejudgment and post-judgment interest to the extent permitted by law; and

K. Such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

195. I demand a trial by jury on all claims and issues for which a jury trial is available by law.

## IX. SIGNATURE

Respectfully submitted,

Turquoya Hall Turquoya Hall

I, Pro Se

[INSERT MAILING ADDRESS]
4187 Pleasant Run Rd Apt. 227
Irving, Texas 75038

[INSERT TELEPHONE NUMBER] (214)892-5839

[INSERT EMAIL ADDRESS] QuoyaT@yahoo.com

Date: 9/4/26

Signature: Turquoya Hall

Turquoya Hall, I Pro Se

**WORKING-DRAFT NOTE:** Bracketed [#] markers must be replaced with consecutive paragraph numbers after the original Section D is inserted. The bracketed filing-only exhaustion sentence should be used only in the complaint actually filed.

Exhibit

EEOC No. 450-2026-04978 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| **CHARGE PRESENTED TO:** | **AGENCY CHARGE NO.** |
| --- | --- |
| EEOC | 450-2026-04978 |
| Texas Workforce Commission Civil Rights Division | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Turquoya Hall

Phone No.: 214-892-5839

Year of Birth: 1988

Mailing Address: 4137 Pleasant Run Road 227

IRVING, TX 75038

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Molina Healthcare

No. Employees, Members: 15 - 100 Employees

Phone No.: (844) 665-4621

Mailing Address: PO BOX 22819

LONG BEACH, CA 90801, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Race, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 09/05/2025

Latest: 06/02/2026

Continuing Action

THE PARTICULARS ARE:

I.PERSONAL HARM:

A. On September 5, 2025, I was placed in a hostile work environment when I reported work issues to my supervisor, Nichelle Rodgers.

B. I was placed on a performance improvement plan by manager, Tenisha Perez which prevented me from applying to other positions.

C. I was wrongfully disciplined for errors that after review were correct.

II.RESPONDENT'S REASON FOR ADVERSE ACTION:

A.None stated.

III.DISCRIMINATION STATEMENT:

I believe that I was discriminated against because of my race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Turquoya Hall
06/09/2026

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

______________________________

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary______________________________

Printed Name ______________________________

[Turqueya Hall <quoyat@yahoo.com>]

n EEOC <no-reply@service.eeoc.gov>

e: Tue, Jun 9, 2026 at 10:56 AM

**U.S. Equal Employment Opportunity Commission**

e Equal Employment Opportunity Commission (EEOC) has issued a final decision regarding EEOC Charge 45 26-04978, which can be found in the document titled **DETERMINATION AND NOTICE OF RIGHTS** in the EEO blic Portal. This email, as well as the DETERMINATION AND NOTICE OF RIGHTS, is official notice that the EE dismissed the above-referenced EEOC charge and that the Charging Party has the right to sue the pondent(s) on this charge in court within 90 days of receipt of this notice. The DETERMINATION AND NOTI RIGHTS also provides additional information related to filing suit under the laws enforced by the EEOC, incl portant time limits. Please note that the 90-day deadline for Charging Party to file a lawsuit is set by law anc ure to file a lawsuit in that time may result in the inability to move forward with a lawsuit.

**ı should log into the EEOC Public Portal, download and read the DETERMINATION AND NOTICE OF RIGHT n as possible. You should also keep a record of the date you received this notice and save the downloade TERMINATION AND NOTICE OF RIGHTS.**

s email is an official notification from the Equal Employment Opportunity Commission (EEOC) regarding ch )-2026-04978. Please do not reply to this email.

*ice of Confidentiality: This email may contain privileged and confidential information, including information tected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you ar intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this nmunication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact (8( )-4000 and destroy all copies of the original message and attachments.*

Comisión para la Igualdad de Oportunidades de Empleo (EEOC, por sus siglas en inglés), ha emitido una isión final con respecto al cargo de dicha Comisión 450-2026-04978, que se encuentra en el documento lado **Determinación y Notificación de Derechos** en el Portal Público de la EEOC. Este correo electrónico, as no la Determinación y Notificación de Derechos, es un aviso oficial que indica que la EEOC ha desestimado go mencionado anteriormente y que la parte acusadora tiene derecho a demandar a los responsables de e go en un tribunal en los 90 días posteriores a la recepción de este aviso. La Determinación y Notificación d echos también proporciona información adicional relacionada con la presentación de la demanda bajo las es aplicadas por la EEOC, incluyendo límites de tiempo importantes. Por favor, tenga en cuenta que la fecha ite de 90 días para que la parte demandante presente la demanda está determinada por ley y que, en caso sentarla en ese plazo, podría dar como resultado la incapacidad de seguir adelante con esta.

**be registrarse en el Portal Público de la EEOC, descargar y leer la Determinación y Notificación de Derech es posible. Además, debería tomar nota de la fecha en la que recibió este aviso y guardar la Determinació ificación de Derechos descargada.**

e correo electrónico es una notificación oficial de la EEOC relacionado con el cargo 450-2026-04978. Por fa responda a este correo electrónico.

*so de confidencialidad: La información contenida en este correo electrónico puede contener información ilegiada y confidencial, incluida información protegida por las leyes de privacidad federales y estatales. Está*

# CP Enclosure with EEOC Form 5 (06/24)

## Privacy Act Statement

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **Form Number/Title/Date.** EEOC Form 5, Charge of Discrimination (06/24).
2. **Authority.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.
3. **Principal Purposes.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.
4. **Routine Uses.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.
5. **Whether Disclosure is Mandatory; Effect of Not Giving Information.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## Notice of Right to Request Substantial Weight Review

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## Notice of Non-Retaliation Requirements

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/09/2026

To: Turquoya Hall
4137 Pleasant Run Road 227
IRVING, TX 75038

Charge No: 450-2026-04978

EEOC Representative and email: BILLIE CASHAW
EEO INVESTIGATOR
BILLIE.CASHAW@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2026-04978.

On behalf of the Commission,

Digitally Signed By:Billie Cashaw
06/09/2026

For Travis Nicholson
District Director

Cc:
Molina Healthcare
4137 Pleasant Run Road
IRVING, TX 75038

Please retain this Notice for your records.

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET 3-26CV3021-E

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** Turquoya Hall

**DEFENDANTS** ~~Molina~~ Molina Healthcare, Inc.

**(b)** County of Residence of First Listed Plaintiff Dallas county, TX
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Turquoya Hall, Pro Se (214)892-5839 QuoyaT@yahoo.com 4137 Pleasant Run Rd 227 Irving, TX 75038

Attorneys *(If Known)*

RECEIVED
SEP - 4 2026
JJF
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 USC 2000e Title VII

Brief description of cause: Race discrimination and retaliation

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. **DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):* N/A JUDGE ______ DOCKET NUMBER ______

DATE 9/3/2026 SIGNATURE OF ATTORNEY OF RECORD Turquoya Hall, Pro Se

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______